UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Busy Baby LLC<br><br>         Plaintiff,<br><br>    v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in his official capacity as Secretary of the Treasury, and the UNITED STATES OF AMERICA.<br><br>         Defendants. | Case No. 26-01678 |

## COMPLAINT

1. Plaintiff Busy Baby LLC ("Busy Baby" or "Plaintiff"), by and though its attorneys, alleges and states as follows:

2. Plaintiff is small veteran-owned and family-owned business.

3. Plaintiff is an importer of record for goods subject to tariffs imposed pursuant to a series of executive orders issued under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 et seq., and challenges the assessment of those tariffs and estimated tariffs.

4. Beginning in February 2025, President Donald J. Trump issued multiple executive orders invoking IEEPA as the purported authority to impose broad *ad valorem* tariffs on goods imported from nearly all foreign countries, including goods for which Plaintiff was importer of record.

1

5. Both this Court and the U.S. Court of Appeals for the Federal Circuit previously held that IEEPA does not authorize the imposition of challenged tariffs. *See V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025); *aff'd in part, vacated in part*, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

6. On February 20, 2026, the Supreme Court of the United States affirmed, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 607 U.S. ----, 2026 WL 477534, at *13 (2026).

7. Plaintiff paid IEEPA duties and estimated duties or otherwise caused IEEPA duties and estimated duties to be paid on entries for which Plaintiff served as importer of record. Through this action, Plaintiff asks the Court to hold, consistent with the Supreme Court's ruling in *Learning Resources, Inc.*, that any and all IEEPA duties and estimated duties collected from Plaintiff by Defendants are unlawful.

8. Plaintiff seeks a complete and immediate refund with interest for unlawfully collected tariffs for those import entries.

9. Despite the Supreme Court's recent ruling, the ultimate availability of a refund for the unlawfully collected IEEPA tariffs remains uncertain for importers, including Plaintiff, in the absence of judicial relief. Indeed, two days after the Supreme Court's decision, the Administration disavowed the prospect of any executive-branch process for refunding the illegally-levied tariffs. For example, U.S. Treasury Secretary Scott Bessent stated that refunds are "not up to the administration, it is up to the lower court, let's just be clear on that." Tara Suter, *Bessent dodges questions about tariff refunds*, The Hill, Feb. 20, 2026, https://thehill.com/business/5749731-bessent-trump-tariffs-refunds.  President Trump has suggested the same, stating, for example, "I guess it has to get litigated for the next two

years." Megan Messerly & Daniel Desrochers, "Trump's next tariff fight: Keeping the money," Politico, Feb. 26, 2026, https://www.politico.com/news/2026/02/26/trumps-next-tariff-fight-keeping-the-money-00799774; *see also* @realDonaldTrump, TruthSocial, Feb. 27, 2026 https://truthsocial.com/@realDonaldTrump/posts/116144649664906576.

10. Accordingly, Plaintiff seeks (i) a declaration that all IEEPA duties are unlawful and void as applied to Plaintiff; (ii) an injunction preventing Defendants from imposing and enforcing any duties from Plaintiff under the challenged executive orders; (iii) a full and immediate refund, with interest as required by law, from Defendants of any and all IEEPA duties and estimated IEEPA duties collected from Plaintiff (that Plaintiff already paid and will continue to pay) pursuant to the challenged executive orders; and (iv) if necessary, reliquidation of entries without regard to IEEPA duties for any already liquidated entries on which the IEEPA duties were unlawfully collected.

## THE PARTIES

11. Plaintiff Busy Baby LLC is a U.S. corporation incorporated in Minnesota, which served as importer of record for goods, including innovative, parent-friendly placemats and accessories for children, on which IEEPA duties were paid.

12. Defendant U.S. Customs and Border Protection ("CBP"), a federal agency and component of the Department of Homeland Security, is the United States agency that collects tariffs or duties, taxes, and fees on goods imported into the United States.

13. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

14. Defendant Department of the Treasury is the federal agency primarily responsible for the national fiscal policy and is where the revenue from the challenged actions is deposited.

15. Defendant Scott Bessent is the Secretary of the Treasury and is sued in his official capacity.

16. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

## JURISDICTION AND STANDING

17. The Court has subject-matter jurisdiction under 28 U.S.C. § 1581(i). *See V.O.S. Selections*, 149 F.4th at 1329-30, *aff'd*, *Learning Resources, Inc.*, 2026 WL 477534, at *6 n.1 ("We agree with the Federal Circuit that the *V.O.S. Selections* case falls within the exclusive jurisdiction of the CIT.").

18. The Court has all of the powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

19. Plaintiff has standing to sue because it is "adversely affected and aggrieved by agency action." 5 U.S.C. § 702; 28 U.S.C. § 2631(i). IEEPA duties imposed by Defendants adversely affected and aggrieved Plaintiff because, as importer of record, it was required to pay and did pay these unlawful duties and estimated duties.

20. Declaratory and injunctive relief from this Court would redress this injury.

21. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). The IEEPA tariffs were first imposed on imports from Canada, Mexico, and China pursuant to Executive Order 14193, Executive Order 14194, and Executive Order 14195, respectively, signed on

February 1, 2025. Additional IEEPA-based "reciprocal" duties were imposed on nearly all imports to the United States pursuant to Executive Order 14257, signed on April 2, 2025. To the extent the cause of action first accrues from the date of the imposition of tariffs, the instant action is filed within two years of that date. In any event, the instant action is filed within two years from the date on which Plaintiff first paid IEEPA duties and within two years from the date on which a notice of liquidation is issued.

## FACTUAL BACKGROUND

I.     **The IEEPA Tariff Executive Orders**

22. On February 1, 2025, the President, issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. *See* Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 1, 2025); Executive Order 14194, *Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 1, 2025); Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 1, 2025). Each executive order was premised on IEEPA authorizing the tariffs, and for each set of tariffs the President claimed they were justified under IEEPA because of a purported national emergency. Collectively, these tariffs, together with all amendments or modifications and any implementing language in the HTSUS, are referred to as the "Trafficking Tariff Orders."

23. The Trafficking Tariff Orders expanded on the national emergency declared in Proclamation 10886, *Declaring a National Emergency at the Southern Border*, 90 Fed. Reg. 8,327 (Jan. 20, 2025), and claimed that the governments of Canada, Mexico, and China have failed to stem the illegal influx of migrants and drugs into the United States.

5

24. The President subsequently modified the Trafficking Tariff Orders, variously delaying, decreasing, or increasing the tariffs. *See* Executive Order 14197, *Progress on the Situation at Our Northern Border*, 90 Fed. Reg. 9183 (Feb. 3, 2025); Executive Order 14198, *Progress on the Situation at Our Southern Border*, 90 Fed. Reg. 9185 (Feb. 3, 2025); Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 5, 2025); Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg 11463 (Mar. 7, 2025); Executive Order 14232, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Southern Border*, 90 Fed. Reg. 11787 (Mar. 6, 2025); Executive Order 14231, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11785 (Mar. 6, 2025); Executive Order 14325, *Amendment to Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 37957 (July 31, 2025).

25. On April 2, 2025, the President imposed a separate set of "reciprocal" tariffs—declaring that day America's "liberation day"—citing a purported emergency based on a lack of reciprocity in U.S. trade relationships. Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 2, 2025) (together with all amendments or modifications and any implementing language in the HTSUS, the "Reciprocal Tariff Order").

26. This Reciprocal Tariff Order imposed a 10 percent baseline tariff on nearly all imports into the United States as well as a set of higher country-specific tariffs, ranging from 11

6

to 50 percent, for certain countries listed in Annex I of the Order. The country-specific tariffs were suspended on most countries until August 2025. *Id.*; Executive Order 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 8, 2025); Executive Order 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15625 (Apr. 9, 2025).

27. The President subsequently modified the Reciprocal Tariff Order through a series of executive orders and associated notices, again variously delaying, decreasing, or increasing the tariffs. *See* Executive Order 14298, *Modifying Reciprocal Tariff Rates to Reflect Discussions with the People's Republic of China*, 90 Fed. Reg. 21831 (May 12, 2025); Executive Order 14316, *Extending Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30823 (July 7, 2025); Executive Order 14326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 14,326 (Jul. 31, 2025); Executive Order 14334, *Further Modifying Reciprocal Tariff Rates to Reflect Ongoing Discussions with the People's Republic of China*, 90 Fed. Reg. 39305 (Aug. 11, 2025); Executive Order 14346, *Modifying the Scope of Reciprocal Tariffs and Establishing Procedures for Implementing Trade and Security Agreements*, 90 Fed. Reg 43737 (Sept. 5, 2025); Executive Order 14358, *Modifying Reciprocal Tariff Rates Consistent with the Economic and Trade Agreement between the United States and the People's Republic of China*, 90 Fed. Reg. 50729 (Nov. 4, 2025).

28. In implementing the Executive-Order-based tariff regime, the President directed modifications to the Harmonized Tariff Schedule of the United States ("HTSUS"),

requiring that goods subject to the challenged tariffs be classified and entered under new tariff codes.

29. On April 14, 2025, several companies challenged the legality of the Trafficking Tariff Orders and the Reciprocal Tariff Order in this Court. *See V.O.S. Selections*, No. 25-cv-66 Dkt. 2. Since the *V.O.S. Selections* complaint was filed, the President has invoked IEEPA to issue additional executive orders imposing additional tariffs and modifying others.

**II.     CBP's Implementation and Collection of the Unlawful IEEPA Duties**

30. CBP is charged with the assessment and collection of duties. 19 U.S.C. §§ 1500, 1502.

31. When goods enter the United States, CBP assesses and collects any tariffs, including the challenged IEEPA duties, on the imported goods based upon the tariff classification of the goods according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

32. Generally, the importer of record pays an estimated duty on each entry based on its customs declaration, which asserts a value, country of origin, and any applicable HTSUS classification(s) for the imported goods. 19 U.S.C. § 1484. In addition to "formal" entry procedures, streamlined "informal" entry procedures are available for entries of certain eligible merchandise. *See generally* 19 C.F.R. Part 143, Subpart C.

33. CBP will review the customs declaration and may inspect the goods before "liquidating" the entry. "Liquidation" is the final computation or ascertainment of duties on entries for consumption or drawback entries. 19 C.F.R. § 159.1.

34. CBP must liquidate entries within one year—unless CBP exercises its discretion to extend the deadline. *See* 19 U.S.C. § 1504(a); 19 U.S.C. § 1504(b)(2); 19 C.F.R. §159.12(a)(1)(ii). For formal entries, CBP typically liquidates duties approximately 314

days after the date of entry of the goods. For informal entries, liquidation typically occurs within one month after the date of entry of the goods.

35. Once liquidation occurs, an importer has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the duties. 19 U.S.C. § 1514. Denials of protests may be appealed to this Court under 28 U.S.C. § 1581(a).

36. Prior cases of this Court and the Federal Circuit have noted that liquidation may prevent an importer from recovering refunds of duties, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

37. However, this Court has determined that it has "explicit power to order reliquidation and refunds where the government has unlawfully exacted duties." *AGS Co. Auto. Solutions v. U.S. Customs & Border Prot.*, No. 25-cv-255, ECF 29 at 6 (Ct. Int'l Trade Dec. 15, 2025) (quoting *In re Sec. 301 Cases*, 524 F. Supp. 3d 1355, 1365—66 (Ct. Int'l Trade 2021)).

38. This Court has determined that 28 U.S.C. § 1581(i) actions are the primary recourse for parties seeking refunds for duties ruled to be illegal and unconstitutional. *Id.*

39. In *AGS*, the Court also separately determined that the defendants—parties that are identical to Defendants in this case—are estopped both "in [*AGS v. USCBP*] and in related cases" from objecting to court-ordered reliquidations of customs entries subject to the IEEPA tariffs. *Id.* at 3–5 (collecting Defendants' repeated representations); *see also Popsockets, LLC v. United States*, USCIT No. 25-cv-379, ECF 8 at 1 (Ct. Int'l Trade Dec. 8, 2025) (same representations); *Strato Technology Solutions, LLC v. United States et al*, USCIT No. 25-cv-322, ECF No. 14 at 4 (Ct. Int'l Trade Dec. 16, 2025) (same). Minute Order, *AGS Co. Automotive Solutions v. United States*, USCIT Ct. No. 25-cv-00255, ECF

Doc. 35 (Jan. 14, 2026) ("[C]onfirm[ing] that the Government's stipulation regarding reliquidation applies to all current and future similarly situated plaintiffs.").

40. With respect to the interest owed in connection with any refunds of IEEPA Tariff Payments, the Government asserted in opposing issuance of the mandate by the Federal Circuit to the USCIT that plaintiffs in that action were not harmed by the delay in issuing refunds because that "can be remedied by payment of money *with appropriate interest*…" Government's Opposition to Motion for Immediate Issuance of the Mandate and Cross-Motion to Stay the Mandate, *V.O.S. Selections v. Trump*, CAFC Ct. No. 25-1812, ECF Doc. 171 (Feb. 27, 2026) (emphasis supplied). Even more recently, in response to the USCIT's refund Order in *Atmus Filtration v. United States*, CBP conceded that "{i}n addition to refunding the IEEPA duties, CBP must also pay importers interest, as required by law." Declaration of Brandon Lord, USCIT Ct. No. 26-cv-1259, ECF Doc. 31 (Mar. 6, 2026) at 9. As such, while the timing of Government action remains uncertain, it has conceded that interest will be paid.

41. The factual circumstances presented in the above cases are relevantly similar to those presented here.

### III.     The Supreme Court Held that IEEPA Does Not Authorize Assessment of Duties

42. The tariff orders described above cite IEEPA, 50 U.S.C. § 1701 *et seq*., the National Emergencies Act, 50 U.S.C. § 1601 *et seq*., Section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

43. None of these statutes authorizes the President to impose tariffs. Among these statutes, Defendants have relied solely on IEEPA to impose and collect the challenged duties.

44. Both this Court and the Federal Circuit have held that IEEPA does not authorize these duties. *See V.O.S. Selections*, 772 F. Supp. 3d at 1370; *V.O.S. Selections*, 149 F.4th at 1340.

45. On February 20, 2026, the Supreme Court affirmed, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc.*, 2026 WL 477534, at *13.

### IV. Plaintiff Paid the Challenged IEEPA Duties

46. Busy Baby was founded in 2017 by Beth Benike, a U.S. Army veteran and entrepreneur. Among other goods, the company sells the Busy Baby Mat, a food-grade silicone placemat invented by Benike that is equipped with suction cups and tethers to keep toys and utensils within reach.

47. Starting with this innovative product, Busy Baby later expanded its offerings to include a range of baby-related items, all designed to make life easier for parents and caregivers.

48. Benike's brother and fellow U.S. Army veteran Eric Fynbo joined Benike in her venture, and together they built a family-owned business that gained national attention.

49. Benike gained traction through word of mouth and eventually earned a spot on the television show Shark Tank. That exposure propelled Busy Baby's sales, leading the company to over $15 million in lifetime sales and products placed at national retailers like Walmart and Target.

50. Benike was honored as Minnesota Small Businessperson of the Year in April 2025. She is also a prominent member of the Main Street Alliance, a national network of 30,000 small business owners.

51. Busy Baby has served as importer of record for goods subject to the challenged IEEPA duties under the new HTSUS codes implementing the tariffs. The sudden imposition of IEEPA duties on Plaintiff's entries nearly destroyed its business, and created significant hardship and uncertainty for Benike, Fynbo, and their employees.

52. As of the date of this Complaint, Plaintiff has paid IEEPA duties imposed under executive orders deemed unlawful, including under Executive Order 14195 imposing a ten percent baseline tariff on Chinese imports and Executive Order 14257 imposing "reciprocal" tariffs on top of existing duties.

53. Plaintiff seeks immediate relief for any and all duties paid or due under IEEPA tariff orders, together with all amendments or modifications and any implementing language in the HTSUS (collectively, the "Challenged Tariff Orders").

## STATEMENT OF CLAIMS

### COUNT ONE
### THE CHALLENGED TARIFF ORDERS EXCEED
### THE PRESIDENT'S AUTHORITY UNDER IEEPA

54. Paragraphs 1 through 53 are incorporated by reference.

55. The Challenged Tariff Orders exceed the grant of authority in IEEPA. The orders are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiff.

56. IEEPA authorizes the President to take certain, specific actions in response to a declared national emergency arising from an "unusual and extraordinary threat[] . . . to the national security, foreign policy, or economy of the United States." 50 U.S.C. § 1701(a). Those actions include the ability to "investigate, regulate or prohibit" importation.

57. This Court and the Federal Circuit in *V.O.S. Selections, Inc.*, 772 F. Supp. at 1383, *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), held that the President exceeded his authority under

IEEPA, when he imposed tariffs on imported goods by application of the Trafficking Tariffs and Reciprocal Tariff Orders.

58. In *Learning Resources, Inc.*, the Supreme Court affirmed, holding that "IEEPA does not authorize the President to impose tariffs." 607 U.S. ----, 2026 WL 477534 (2026), at *13.

59. Plaintiff respectfully requests that this Court apply the binding decision of the Supreme Court, declare the Challenged Tariff Orders unlawful as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order the immediate refund of all IEEPA duties collected on entries for which Plaintiff served as importer of record, together with interest, as provided by law.

## COUNT TWO
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201

60. Paragraphs 1 through 59 are incorporated by reference.

61. Federal courts have the power to "declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

62. Plaintiff's claims present an actual controversy as to the authority of Defendants to implement and collect the resulting tariffs under IEEPA.

63. Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA duties for goods it entered into the United States, as a result of the Challenged Tariff Orders.

64. This Court can exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful, that Defendants lack authority to implement and collect the resulting tariffs as to Plaintiff, that any liquidated entries on which the challenged IEEPA duties were paid by Plaintiff be reliquidated without regard to IEEPA duties and that such IEEPA duties paid by Plaintiff be immediately refunded with interest,

and that any IEEPA duties or estimated duties tendered for unliquidated entries ultimately be liquidated without assessment of IEEPA duties and that any IEEPA duties or estimated duties paid be immediately refunded, so that Plaintiff may be refunded with interest for all challenged IEEPA duties paid or payable.

\*   \*   \*

## PRAYER FOR RELIEF

For the reasons stated above, Plaintiff respectfully requests that this Court:

a.  Declare that, consistent with the Supreme Court's decision in *Learning Resources Inc.*, the President lacks authority under IEEPA to impose the challenged tariffs;

b.  Declare that the Challenged Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiff and entries for which Plaintiff served as importer of record;

c.  Declare that, with respect to Plaintiff and entries for which Plaintiff served as importer of record, CBP lacks authority to implement and collect any tariffs, whether final or estimated, set out in the HTSUS that are based on the Challenged Tariff Orders;

d.  Permanently enjoin Defendants, with respect to Plaintiff and entries for which Plaintiff served as importer of record, from imposing and enforcing any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

e.  Order Defendants to immediately and completely refund to Plaintiff all IEEPA duties and estimated IEEPA duties collected on entries for which Plaintiff served as importer of record, regardless of entry type or liquidation status, and whether the entry was formal or informal in nature, including those that Defendants may continue to collect or retain during the pendency of this action, together with pre- and post-judgment interest as provided by law;

f. Order that, with respect to Plaintiff and entries for which Plaintiff served as importer of record, Defendants promptly and completely refund IEEPA duties and estimated IEEPA duties, together with interest as provided by law, without requiring that Plaintiffs await liquidation of such entries—*i.e.*, order *pre*-liquidation refunds;

g. Order that, with respect to Plaintiff and entries for which Plaintiff served as importer of record, Defendants promptly reliquidate with no assessment of IEEPA Duties any previously-liquidated entries on which the challenged IEEPA tariffs were assessed, if necessary;

h. Award Plaintiff its reasonable costs, including attorney's fees, incurred in bringing this action; and

i. Grant any such other relief as this Court may deem just or proper.

Respectfully submitted,

Dated: 3/11/2026

/s/ Matthew J. Platkin
Matthew J. Platkin
Angela Cai
Ravi Ramanathan*
**PLATKIN LLP**
413 Washington Ave
Unit 174
Belleville, NJ 07109
Phone: (973) 561-1951
Email: mplatkin@platkinllp.com

Norman L. Eisen*
Tianna J. Mays*
Pooja Chaudhuri*
Zsa'Queria Martin*
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE #15180
Washington, DC 20003

15

Phone: (202) 601-8678
Email: pooja@democracydefenders.org

*Counsel to Busy Baby LLC*

\**application for admission or pro hac vice pending or forthcoming*